# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CAMSHAFT CAPITAL MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> APEX FUND SERVICES (INDIANA), INC.; and APEX FUND AND CUSTODY SERVICES, LLC, <br><br> Defendants. | Case No: 1:24-cv-00713-JRS-MG |

### DECLARATION OF WILLIAM C. MORTON

William Cameron Morton, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the sole member of Plaintiff Camshaft Management, LLC ("Camshaft Management"), which is the general partner of Camshaft Capital Fund, LP ("Camshaft Fund"). I submit this declaration in support of Camshaft Management's motion for a temporary restraining order and preliminary injunction, which arises out of two subpoena (the "Indiana Subpoenas") issued by BYJU's Alpha, Inc. (the "Debtor") to Apex Fund Services (Indiana) Inc. ("Apex Indiana") for documents regarding the Camshaft Fund and the intent of Apex (as defined below) to produce responsive documents in violation of its contractual obligations.[1]

2. This declaration is based on my personal knowledge and/or a review of documents in Camshaft Management's possession.

---

[1] The Debtor served one other subpoena, with the same document requests that are in the Indiana Subpoenas, on Apex Indiana at an address in New York, New York. I will refer to all the subpoenas collectively as the "Subpoenas." The Subpoenas are currently the subject of motions to quash in New York and Indiana.

1

I.      **Contractual Relationship with Apex**

   A.      **The Apex Agreement**

   3.      In December 2021, Camshaft Fund and Camshaft Management engaged Apex Funds Services (Canada) Ltd. ("Apex Canada") as an administrator for the Camshaft Fund.

   4.      The terms of administration are set forth in an administration agreement, dated December 9, 2021, between Camshaft Fund and Camshaft Management (collectively, "Camshaft") and Apex (Canada) (the "Apex Agreement"), which is annexed to the Declaration of Pieter Van Tol as Exhibit A.[2]

   5.      Camshaft's business involves highly confidential financial information as well as structures that are proprietary to Camshaft (as described below). It was of paramount importance to Camshaft that Apex protect such confidential and proprietary information.

   6.      In entering the relationship with Apex, Camshaft relied on the strict confidentiality provisions in the Apex Agreement, which broadly defines "Confidential Information" as follows:

---

[2] Although the Apex Agreement was originally with Apex Canada, it was novated in April 2022 and Apex Fund and Custody Services LLC ("Apex F & C") became the relevant counterparty. Because the Subpoena calls for the production of documents from Apex Indiana, Camshaft Management has named both Apex F & C and Apex Indiana as defendants in this action. I will refer to Apex F & C and Apex Indiana collectively as "Apex."

2

8.1.1   financial, investments, commercial, business, technical, operational, administrative, marketing materials, client communication materials or other information or data (including but not limited to all information about existing investments, potential investment opportunities of any kind whatsoever, clients, potential clients, Partners, suppliers, financial accounts, trade secrets, know-how, new products, business opportunities and future plans for the development of the business of the Fund), supplied or received (whether in oral, written, magnetic, electronic, digital or any other form) by the Administrator and in any way relating to the Fund or the Administrator;

8.1.2   the business of the Fund, Administrator and its affiliates (including, without limitation, presentations, articles, correspondence, reports, documents, logos, slogans, themes, layouts, presentations, artwork, computer programs, charts or related items, and the names and expertise of employees, and any and all other know-how, ideas, and other technical, business, financial, client and product development plans, forecasts, strategies, techniques and information);

8.1.3   computer programs, computer code, modules, scripts, algorithms, features and modes of operation, inventions (whether or not patentable), techniques, processes, schematics, testing procedures, software design and architecture, design and function specifications, analysis and performance information, user documentation, internal documentation, designs, ideas, concepts, metaphors and content for sites on the World Wide Web, the Internet and other computer networks;

8.1.4   copies, analyses, compilations, studies and other documents which contain or otherwise reflect or are generated from any such information;

8.1.5   any other information disclosed which is designated by the disclosing party as confidential or which is by its nature clearly confidential.

(Van Tol Decl., Ex. A, §§ 8.1.1-8.1.5)

7.     Camshaft's documents and information fall within each of the definitions of "Confidential Information." One of Camshaft's trade secrets includes a novel structure that was developed for the investment of the Alpha Funds (as that term is defined in the above action). It is proprietary and subject to several strict confidentiality agreements.

8.     In order to protect the Confidential Information, Section 8 of the Apex Agreement states as follows:

> 8.2 Unless required by law, courts, governmental agencies, regulatory authorities or self-regulatory authorities or pursuant to applicable law or with the written authority of the other party, neither of the parties hereto shall during the term of this Agreement or thereafter disclose to any person, firm, corporation or governmental agency whatsoever any Confidential Information of the other party or information which is proprietary in nature, of which it may in the course of its duties and operations hereunder or otherwise become possessed and each party shall use all reasonable endeavors to prevent any such disclosure as aforesaid.

(*Id.*, § 8.2) By requiring a court order, Section 8.2 gives Camshaft an advance opportunity to object to the potential disclosure of Confidential Information.

9. I understand that Apex (Indiana) takes the view that it can, and has stated it will, produce Confidential Information (despite Camshaft's objection and in violation of Section 8.2) <u>before</u> there is an order by the one of the courts currently deciding Camshaft's motions to quash the Subpoenas. Such an interpretation makes no sense (Section 8.2 is abundantly clear), and the proposed action causes irreparable harm to Camshaft. Further, Apex's intention to share information unnecessarily early is a direct breach of Section 8.2's provision that "each party shall use all reasonable endeavors to prevent any such disclosure as aforesaid."

10. On Camshaft's behalf, I also reserve all rights to, and likely will, pursue further action against Apex in the event Confidential Information is disclosed before there is a court order. Regardless of the interpretation of Section 8.2, Apex's willingness to start sharing confidential and proprietary information is contrary to its role of protecting its hedge fund clients' interest, which is vital to its business's growth and standing. Thus, Apex's highly unusual actions here raise a concern that it has different motivations. That said, it is public knowledge that certain funds holding equity in Apex are opportunistic and distressed focused funds (one of the equity holders has "opportunistic" in its entity name), which coincidently is the same focus of the "unnamed lenders" (Redwood, CQS, HG Vora, Ares, HPS, Davidson Kempner, TOR, Veritas, Varde and

more) that are represented by GLAS and suing Camshaft in other matters (including the bankruptcy matter in Delaware) for the exact information sought here.

B. **The Apex Shadow NAV Agreement**

11. Camshaft and Apex F & C also entered into the Shadow NAV Services Agreement dated February 25, 2022 (the "Apex Shadow NAV Agreement"), which is annexed to the Declaration of Pieter Van Tol as Exhibit B.

12. The Apex Shadow NAV Agreement also includes a confidentiality provision that states as follows:

> Apex shall not except in the exercise of its duties hereunder or required by law at any time disclose any information relating to the affairs of the Company to any person (other than the [Camshaft Fund] or its auditors) not authorized by the [Camshaft Fund] to receive such information and Apex will use its best endeavors to prevent any such disclosures as aforesaid whether by any officers, employee or agent of itself or by anyone else.

(Van Tol Decl, Ex. B, § 6.)

13. Apex's acts and omissions described above also violate Section 6 of the Apex Shadow NAV Agreement.

II. **Apex's Services to Camshaft in Connection with the Alpha Funds**

14. Apex provided administration services for the Alpha Funds investment from late April 2022 through September 30, 2023.

15. After September 30, 2023, Apex does not have any applicable information of the Alpha Funds investment. Further, after the draft work of the October 2023 Net Asset Value for Camshaft Fund, Apex has no applicable information for Camshaft; thus, as of today, it has been nearly six months since Apex has had applicable information for Camshaft.

16. Apex, therefore, does not have any applicable information (from Camshaft) regarding the transfer of the Alpha Funds that took place in February 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 25, 2024

*[DocuSigned by: William Cameron Morton, 100E0A38ED8D4CB...]*

William Cameron Morton
