UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CAMSHAFT CAPITAL FUND, LP, CAMSHAFT CAPITAL ADVISORS, LLC, CAMSHAFT CAPITAL MANAGEMENT, LLC, | ) ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | No. 1:24-cv-00733-JPH-CSW |
| BYJU'S ALPHA, INC., | ) ) | |
| Appellee. | ) ) ) | |
| APEX FUNDS SERVICES (INDIANA), INC., | ) ) ) | |
| Interested Party. | ) ) ) | |

## ORDER DENYING APPELLANTS' MOTION FOR A STAY PENDING APPEAL OF ORDER ON MOTION TO QUASH SUBPOENAS

Appellants have appealed the Bankruptcy Court's denial of their motion to quash subpoenas issued to Apex Funds Services, Inc.  Appellants seek an emergency stay of the Bankruptcy Court's order pending this Court's ruling on the appeal.  For the reasons that follow, the motion for an emergency stay is **denied.**  Dkt. [3].

## I.
## Background

The subpoenas at issue in this appeal were issued to Apex through an adversary proceeding that is pending in the Bankruptcy Court for the District of Delaware, *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, No. 24-50013

1

(Bankr. D. Del.) (the "Adversary Proceeding").  There, the debtor, BYJU's Alpha,

Inc., brings claims against three related entities: Camshaft Capital Fund, LP,

Camshaft Capital Advisors, LLC, and Camshaft Capital Management, LLC

(collectively, Camshaft) alleging fraudulent transfers, breach of fiduciary duty,

and violation of the Bankruptcy Court's automatic stay.  Dkt. 3-3 (Amended

Complaint).  Related proceedings are pending in the United States District

Court for the District of Delaware.  Dkt. 3-2 at 6 (Tr. at 5:11–19); *see* dkt. 20 at

6–7.

In the Bankruptcy Court for the Southern District of Indiana, Camshaft

filed a motion to quash the subpoenas that BYJU served on Apex.  Dkt. 1; dkt.

3-5 (Notice of Subpoena).  The Bankruptcy Court held a hearing on April 25,

2024, and ruled on the motion to quash during the hearing.  Although the

Bankruptcy Court denied the motion to quash, it limited some of the specific

requests.  *See* dkt. 3-2 at 62 (Tr. at 61:19–24).  Camshaft then filed this

bankruptcy appeal of the denial of its motion to quash on April 29, 2024.  The

next day, Camshaft filed an emergency motion to stay the Bankruptcy Court's

denial of its motion to quash pending this Court's resolution of the appeal.

Dkt. 3.  That same day, the Court scheduled a telephonic status conference for

May 1, 2024, on Camshaft's emergency motion.  Dkt. 5.

After Camshaft's April 29 emergency motion to stay and before the May 1

telephonic status conference, Apex responded to the subpoenas by producing

431 documents totaling 3,031 pages to BYJU.  Dkt. 20 at 7 n.2.

During the May 1 telephonic hearing, counsel for the parties and Apex informed the Court that Apex had already complied with all the subpoena requests except #4, which requests: "All ledgers and audited and unaudited financial statements of Camshaft."  Dkt. 3-5 at 8.  Therefore, the only items that remain to be produced pursuant to the subpoenas (as modified by the Bankruptcy Court) are "several pre-2022 Camshaft financial statements."  Dkt. 20 at 16; dkt. 23 at 11.  Apex agreed that it would not produce any more records until this Court ruled on the emergency motion to stay.

BYJU has responded to the emergency motion to stay, dkt. 20, and Camshaft has replied, dkt. 23.

## II.
## Applicable Law

"In considering whether to grant a stay pending appeal under Bankruptcy Rule 800[7], courts consider the following four factors: 1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997).  "Applicants for preliminary relief have threshold burdens to demonstrate the first two factors: they must show that they have some likelihood of success on the merits and that they will suffer irreparable harm if the requested relief is denied." *Id.*  "[I]f the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of

harms is unnecessary, and the stay should be denied without further analysis." *Id.* at 1301.

### III.
### Analysis

**A. Likelihood of success on the merits**

For the Court to grant Camshaft's emergency motion to stay pending appeal, Camshaft must "demonstrate a substantial showing of likelihood of success" on the merits. *In re Forty-Eight Insulations*, 115 F.3d at 1301. This requires more than "the possibility of success, because [it] must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *Id.* On appeal, the bankruptcy court's decision on the motion to quash—a discovery ruling—is reviewed for abuse of discretion. *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 726 (7th Cir. 2021). "A decision is an abuse of discretion only if no reasonable person would agree with the decision made by the trial court." *Lange v. City of Oconto*, 28 F.4th 825, 842 (7th Cir. 2022).

Camshaft argues that the subpoenas "are substantially overbroad and seek documents that have no relevance to the claims and defenses in the Adversary Proceeding," and that the Bankruptcy Court erred by applying a broader standard of relevance than Federal Rule of Civil Procedure 26(b)(1) requires. Dkt. 3 at 12. BYJU responds that the Bankruptcy Court correctly applied Rule 26(b)(1)'s standard for scope and relevance. Dkt. 20 at 17–18. Camshaft replies that the Bankruptcy Court's ruling resulted in the production

of "an astonishing number of irrelevant and non-responsive documents" that "cannot pass any relevancy test."   Dkt. 23 at 10.

Under Rule 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" under several enumerated factors:

- the importance of the issues at stake in the action,
- the amount in controversy,
- the parties' relative access to relevant information,
- the parties' resources, the importance of the discovery in resolving the issues, and
- whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "The standard for discovery under [the Federal Rules of Civil Procedure] is extremely broad," *Memorial Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981), and "bankruptcy courts have wide discretion on matters of discovery," *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022).

Here, the Adversary Proceeding involves the alleged fraudulent transfer and concealment of approximately $533 million by BYJU's sole officer to Camshaft, as well as a breach of fiduciary duty claim against that officer.  Dkt. 3-3 at 3, 44–55.  In ruling on the motion to quash, the Bankruptcy Court cited and applied the Rule 26(b)(1) standard.  The Bankruptcy Court correctly stated that Rule 26(b)(1) requires only that the records be discoverable.  Dkt. 3-2 at 33 (Tr. at 32:12–17); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  As the

Bankruptcy Court went through each subpoena request, it made decisions as to whether modifications were necessary and properly relied upon the Rule 26(b)(1) standard in doing so. *See, e.g.*, *id.* at 50 (Tr. at 49:21–23) ("Well, I can see a perspective under Rule 26 that it might be relevant in the fact that if they actually did provide investment services . . . ."). The Bankruptcy Court explained its view of the requests' relevancy:

> You got to stop with relevance. Most everything is going to be relevant because there's a great deal of dispute between the – from the debtors as far as where the money went. Who is Camshaft? What is Camshaft? What does Camshaft do? What agreements did Camshaft do with the money, which I think they admitted they no longer have? So there's—so they had it, and then it's gone. So I think a lot of this information is relevant as to what communication did you have as to where did it go or who directed you to put it where, who was doing this, and is this one individual doing it? Is it multiple individuals doing it? . . . All those things probably might be relevant. They might be relevant because it could have an impact on the claim.

Dkt. 3-2 at 32–33 (Tr. at 31:23–32:17).

The record demonstrates that the Bankruptcy Court considered each subpoena request, explicitly weighed Rule 26(b)(1)'s relevance requirement and made modifications as necessary. Camshaft nevertheless argues that the Bankruptcy Court erred, as evidenced by Judge Graham's statement about differences between bankruptcy and district court judges based on his experience as a bankruptcy judge, dkt. 3-2 at 66 (Tr. at 65:15-20). But as explained above, Judge Graham cited and applied the proper Rule 26 standard, so Camshaft is not likely to succeed on its argument that he abused his discretion, applied a "broader standard of bankruptcy relevance," dkt. 3 at 12,

6

or otherwise failed to properly consider and apply Rule 26 in ruling on the
motion to quash.

Camshaft also points to Apex's production of materials that it believes
are subject to attorney-client privilege and/or are confidential as evidence that
it's likely to succeed on appeal. *See* dkt. 23 at 10–11. Even if Apex produced
"irrelevant and non-responsive" documents, *see id.*, that does not mean the
Bankruptcy Court's rulings on the motion to quash were erroneous. Rule
45(d)(3)(A)(iii) requires a subpoena be quashed if it requires disclosure of
privileged material, but the Bankruptcy Court's ruling showed that it avoided
Rule 45 privilege issues and reached a conclusion consistent with Rule 26
when ruling on each subpoena request. For example, the Bankruptcy Court
disallowed Request #3 because it "r[a]n afoul of privilege or protective matters,"
while allowing Request #4 because it "gets closer to Rule 26 and also takes you
further away from privilege or protected matter" and ultimately, "doesn't fall
under Rule 45's prohibitions." Dkt. 3-2 at 51–52 (Tr. at 50:22–51:6).
Camshaft is therefore not likely to be able to show that the Bankruptcy Court's
ruling on the motion to quash the subpoenas was an abuse of discretion.

In sum, Camshaft has not made a "substantial showing of likelihood of
success" on its appeal of the Bankruptcy Court's ruling on the motion to
quash. *In re Forty-Eight Insulations*, 115 F.3d at 1301.

### B. Irreparable harm absent a stay

Having failed to demonstrate likelihood of success on its appeal of the
Bankruptcy Court's ruling on its motion to quash, Camshaft is not entitled to a

stay.  *In re Forty-Eight Insulations, Inc.*, 115 F.3d at 1300.  Nonetheless, the Court addresses irreparable harm as a separate, independent reason for denying Camshaft's motion.

Camshaft argues that it would suffer irreparable harm without a stay because its sensitive and confidential information will be—and already has been—produced by Apex.  Dkt. 3 at 13; dkt. 23 at 11–12.  Camshaft argues that production of these documents will result in irreparable harm in the form of: (1) a "loss of client confidence,"  dkt. 3 at 14 (citing *J.P. Morgan Sec. LLC v. Weiss*, No. 19-cv-04163, 2019 WL 605176 (S.D. Ind. Nov. 15, 2019); (2) disclosure of its limited partners' personal information and financial transactions, *id.* at 13; and (3) disclosure of its proprietary trade secrets, *id.* at 15.  BYJU responds that Apex's production has mooted the issue of irreparable harm because Apex has already produced records responsive to most of the requests.  Dkt. 20 at 21.  BYJU further argues that any potential harm related to Apex's production is mitigated by the Protective Order that was entered in the Delaware Bankruptcy Court.  *Id.* at 23–24.

Camshaft bears the burden to show irreparable harm.  *See In re Forty-Eight Insulations*, 115 F.3d at 1300 ("Applicants for preliminary relief have threshold burdens to demonstrate the first two factors.").  Since a stay would merely prevent further productions from Apex while this appeal is pending, *see Porco v. Trs. of Ind. Univ.*, 453 F.3d 390, 396 (7th Cir. 2006), Camshaft must show that production of the remaining items responsive to Request #4—for

8

Camshaft's pre-2022 financial statements—will cause irreparable harm.
Camshaft fails to meet that burden here.

Apex's records relating to Camshaft are subject to a comprehensive
Confidentiality Agreement and Protective Order that was entered in the
Adversarial Proceeding pending in the Bankruptcy Court in Delaware.  Dkt. 3-
8.  The Protective Order allows Camshaft to designate any sensitive, non-public
records as "Confidential" and further allows for "highly sensitive trade-secret
information" to be designated as "Attorney's Eyes Only."  Dkt. 3-8 at 4–6.  So,
to the extent that the pre-2022 financial statements contain confidential or
sensitive information, the Protective Order is "sufficient to address Camshaft's
alleged confidentiality concerns."  Dkt. 20 at 23; *see* dkt. 3-8 at 4, 14–15
(outlining procedure for resolving designation disputes—first a meet-and-
confer, and then, if necessary, resolution by the Delaware Bankruptcy Court).
Indeed, that's the point of a Protective Order.  *See United States ex rel. Fischer
v. Cmty. Health Network, Inc.*, No. 1:14-cv-1215, 2024 WL 1773655, at *8
(citing Wright & Miller, *8A Fed. Prac. & Proc.* § 2043 (3d ed. 2023) ("[P]rotective
orders that direct the use and dissemination of material are sufficient
safeguards to lessen (or eliminate) any harm disclosure may cause.").
Moreover, Apex redacted from the responsive documents produced to date
personal information identifying Camshaft's limited partners.  Dkt. 20 at 15;
dkt. 19-9 (under seal).

To the extent Camshaft argues that BYJU has violated the Protective
Order, dkt. 23 at 13, Camshaft's recourse is to raise such issues with the

Court where the Protective Order was entered, the Bankruptcy Court for the District of Delaware.  As the Court stated during the telephonic status conference, the issue presented by Camshaft's appeal in this ancillary proceeding is narrow—has Camshaft shown that it's entitled to a stay of the Bankruptcy Court's order denying the motion to quash the subpoenas issued to Apex?  Issues related to interpretation and enforcement of the Protective Order are beyond the scope of that issue.

The same is true for records already produced by Apex that Camshaft argues exceed the scope of the subpoena; that issue is not currently before the Court.  Because Apex already produced most of the responsive documents, the only remaining issue is whether Request #4 of the subpoena should be quashed.  Any clawback arguments should be handled in the District of Delaware, where the Protective Order was entered, or if necessary, the Bankruptcy Court for the Southern District of Indiana, not here.

Even setting the Protective Order aside, the irreparable harms alleged by Camshaft do not warrant a stay halting the remaining production.  First, Camshaft has not shown how a "loss of client confidence" would ensue from the production of pre-2022 financial statements, and its citation to a case concerning a non-compete agreement is inapplicable here.  Dkt. 3 at 14 (citing *Weiss*, 2019 WL 6050176).  Second, Camshaft has not shown how client information would be exposed when Apex complies with Request #4, and even if it had, the "expectation and intent that . . . communications be maintained as private is not a legitimate basis for shielding those communications from

10

discovery," *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010), much less a basis for showing irreparable harm.  While Camshaft cites its brochure advising clients that it will comply with federal securities laws when handling their personal information, that promise has no bearing on information provided by a third party in response to a civil subpoena.  Dkt. 3 at 14 (citing dkt. 3-7).

Last, Camshaft's trade secret arguments are underdeveloped.  Camshaft argues that the "whole structure" of Camshaft and its Alpha Funds is "highly proprietary" and therefore a trade secret.  Dkt. 23 at 12–13 (citing dkt. 3-4).  But Camshaft does not explain why its entire structure is a trade secret, or how the pre-2022 financial statements would disclose trade secrets.  *See* dkt. 23 at 13; *Fischer*, 2024 WL 1773655, at *8 ("[I]nformation merely being labeled a trade secret does not form a sufficient basis for barring disclosure of the requested information.").

Camshaft has not shown that it would be irreparably harmed absent the entry of a stay, and the Delaware Protective Order mitigates any potential harms to Camshaft from Apex's disclosures.

## IV.
## Conclusion

Because Camshaft has not shown that it is likely to succeed on the merits or that it would suffer irreparable harm absent a stay, the motion for an emergency stay, dkt. [3], is **denied**.

11

**SO ORDERED.**

Date: 5/14/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel